Moses M. Lippincott, appellant, v. Clare C. Pope
et al., appellees: Byers Lumber Company,
appellant.

Filed October 25, 1932.  No. 28127.

*James E. Addie,* for appellants.

*Stiner & Boslaugh* and *Edmund Nuss, contra.*

Heard before Goss, C. J., Dean and Paine, JJ., and
Broady and Rhoades, District Judges.

Rhoades, District Judge.

This was an action to foreclose mechanics' liens by appellants herein and Stevens Plumbing Company against
Clare C. Pope.  Lucy J. Pope, the mother of Clare C. Pope,
also asked for a foreclosure of her mortgage against the
same property.  Appellants asked that the mortgage of
Lucy J. Pope be canceled of record, as fully paid, or that
her lien be subordinated to their liens.  The court found
for each of the mechanics' lienholders for the full amount
asked by them; found that the mortgage of Lucy J. Pope
was a first lien, and directed that the property be sold
to pay the liens.  From that part of the judgment decreeing the mortgage of Lucy J. Pope to be a first lien,
and not subordinating it to the liens of appellants, this
appeal was taken.

The question presented is one of priorities between a
senior mortgagee and subsequent lienors, where, after the
commencement of repairs on premises damaged by wind,

the mortgagee released to the mortgagor the proceeds of insurance paid for such damage, no notice of their claim of lien or demand for protection having been made by the junior lienors.

On September 10, 1928, Clare C. Pope, hereinafter referred to as mortgagor, together with his wife, residents of Hastings, Adams county, Nebraska, for consideration, executed and delivered to his mother, Lucy J. Pope, a resident of Red Cloud, Webster county, Nebraska, hereinafter referred to as mortgagee, a note and mortgage on the premises in question in the principal sum of $1,500, payable $16 a month, with interest at 8 per cent. per annum. The mortgage provided that the mortgagor should keep the buildings on the premises insured against fire and tornado in the sum of $1,500, loss, if any, payable to the mortgagee. The mortgage was duly recorded in the office of the register of deeds of Adams county, Nebraska, on the 22d day of September, 1928. Twenty-two months' payments were made thereon.

On May 8, 1930, the premises were damaged by a tornado. On May 12, 1930, an adjustment was made by the insurance company with the mortgagor in the sum of $1,574.25, and on the same day Moses M. Lippincott, hereinafter referred to as plaintiff, entered into an agreement with the mortgagor to repair the premises and on May 14 commenced work thereon.

On May 22, 1930, the insurance company issued a sight draft on the First National Bank of Chicago, Illinois, payable jointly to the mortgagor and the mortgagee, which was indorsed by both and deposited on June 10, 1930, in the mortgagor's bank at Hastings, and paid on presentation. The mortgagor's testimony that the entire proceeds were received and retained by him is not disputed.

Moses M. Lippincott, plaintiff, as general contractor, and Byers Lumber Company and Stevens Plumbing Company, defendants herein, as materialmen, duly filed liens within the statutory period.

It is conceded plaintiff had knowledge of the mortgage before he commenced repairing the premises and that at no time did he or the other lienors notify the mortgagee of the improvements being made or of their claim of lien against the premises. Neither is any proof offered to indicate the mortgagee had actual knowledge of the repairs being made on the premises at the time she indorsed the insurance draft.

The marshaling of assets is a familiar practice in equity. It is admirably stated by Mr. Pomeroy in section 1414 of the fourth edition of his Equity Jurisprudence:

"The equitable remedy of marshaling securities, with that of marshaling assets, depends upon the principle that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. The general rule is, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only,—as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another,—the former must seek satisfaction out of that fund which the latter cannot touch. If, therefore, the prior creditor resorts to the doubly charged fund, the subsequent creditor will be substituted, as far as possible, to his rights."

This interference with the strict legal rights of the prior lienor is based on the principle that justice requires that he should not arbitrarily or capriciously ignore the rights of another creditor of the same debtor, having a less favored security.

But notice of the senior lienor is essential; and mere constructive notice or even actual knowledge has been held not sufficient.

In *Ocobock v. Baker*, 52 Neb. 447, the court held mere notice or knowledge was not sufficient, but that diligence was required of the junior lienor, and if he neglected to notify the senior lienor that he desired him to first exhaust the security, upon which he had no lien, he was

not entitled to equitable relief. This principle has been sustained by later decisions of this court.

Plaintiff alleged he relied on the statement of the mortgagor, made before he commenced work, that the mortgage would be paid from the insurance proceeds and released. Fraud and collusion are charged for failure so to do. Since the mortgagee was not a party to this arrangement and not shown to have knowledge thereof, no fraud or collusion can be imputed to her. In the absence of notice and claim, she owed junior lienors no duty of protection, and failure to give proper notice was negligence on their part.

In a more recent case, *First State Bank v. Niklasson*, 116 Neb. 713, in an opinion written by District Judge Redick, the court holds strictly to the view that the junior lienor must notify the senior lienor he will require him to first exhaust the security not covered by the junior lien. We quote from the opinion as follows:

"It is contended by the Newman Grove Bank that the plaintiff should be required to exhaust its chattel mortgage security before being allowed to foreclose its mortgage upon the real estate, or that its lien should be reduced to the extent of the value of such chattel security. It appears that upon execution of the quitclaim deed the plaintiff released its chattel security, and the question is whether, under the doctrine of marshaling of assets, it should be required to credit the value thereof as against the claims of the Newman Grove Bank. We have held, contrary to defendant's contention, in *Ocobock v. Baker*, 52 Neb. 447, that, in the absence of notice by the junior lienholder that he would require the senior to first exhaust the property not covered by the junior lien, a release of the latter property from the senior lien would not subrogate the junior lien to a first lien upon the property covered by both liens. See, also, 26 Cyc. 935b, where it is said: 'In any case the prior incumbrancer is entitled to notice of the existence of the junior claim, and of the intention of the junior creditor to com-

pel the former to make his election in compliance with this principle.' No such notice was here given prior to the release of the chattel mortgage."

In *Andersen Yard Co. v. Citizens State Bank*, 187 Wis. 60, the lien of a senior mortgage was subordinated to that of a junior mechanic's lien, where the mortgagee released a part of the proceeds of insurance money received after the mechanic's lien had attached, based upon notice. In the course of opinion the court said.

"The findings of the court that the defendant (mortgagee) had notice of this claim for a lien before making the payment to the mortgagor and that such payment was made without the plaintiff's (mechanic lienor) consent are well sustained by the evidence. The testimony also shows that, in communications between the agent of the plaintiff and the officers of the defendant bank, the bank was made acquainted with the fact that the plaintiff was looking to the insurance money as a fund which would help to make its claim secure."

A mechanic's lien attaches from the time of commencement of work or delivery of materials, and in the instant case the draft for payment of insurance was issued after appellants' liens had attached. Had the mortgagee been timely notified of the intention of the junior lienors to require her to first exhaust the insurance proceeds in satisfaction of her lien the junior liens would have been entitled to priority.

It is contended the mere fact that the mechanics' liens had attached prior to the release of the insurance proceeds was sufficient to charge the mortgagee with notice. It is the general rule and the law of this state that the recording of a junior lien does not constitute constructive notice thereof to a prior lienor. The attaching of the mechanics' liens cannot be construed as of greater effect or notice than if recorded as of attaching date.

Under the facts disclosed by the record, we find the pleadings and evidence to sustain the decree, and it is therefore                                    AFFIRMED.